**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02726-CMA

PRESTON J. KEELER IV,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

    Plaintiff Preston J. Keeler, proceeding *pro se*,[1] claims he is disabled because he suffers from myriad pain-related ailments that were triggered by a bad measles vaccine and undiagnosed (and now chronic) Lyme disease. An Administrative Law Judge (ALJ) disagreed, principally relying on a report from Dr. Michael Weaver, who asserted that Plaintiff's impairments were not disabling and that doctors who endorsed Plaintiff's position on the origin of his symptoms were relying on bad science. Plaintiff strenuously disagrees with the ALJ's reasoning, Dr. Weaver's analysis, and the entire process that has led to this appeal. None of these arguments are availing. Because the ALJ's determination is supported by substantial evidence, this Court affirms.

---

[1] Because Plaintiff is proceeding *pro se*, this Court interprets his "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). What follows is this Court's best attempt at interpreting Plaintiff's somewhat disjointed briefing.

## I. **BACKGROUND**

As the ALJ noted, this is a case in which there are "markedly divergent" medical opinions about the extent and existence of Plaintiff's impairments. (AR 27.) On the one hand, Plaintiff urges that he suffers from chronic Lyme disease, chronic fatigue syndrome, and generally debilitating pain. He claims his conditions derive in large part from two causes: (1) a bad measles vaccine he received in 1984, which severely damaged his immune system; and (2) untreated Lyme disease, which he contracted from a tick bite in 1984, and which has ultimately led him to suffer from "chronic Lyme disease."

In support of his position, Plaintiff can point to some medical diagnoses that suggest he is suffering from debilitating physical impairments. *See, e.g.*, (AR 541-45, 548-52) (June 2011 opinions rendered by Dr. Ruben Zorilla who, although never stating that he physically examined Plaintiff, asserts that Plaintiff has Lyme disease, suffers from chronic muscular and joint pain, and would need lifelong treatment for these ailments); (AR 557-63) (opinion from a non-treating physical therapist who performed some examination of Plaintiff, suggested that Lyme disease caused Plaintiff's ailments, and concluded that Plaintiff was able to only minimally perform work-related tasks because of pain).

On the other hand, the ALJ relied principally on the opinion testimony of Dr. Michael Weaver, who conceded that Plaintiff suffered from some pain and tenderness on palpation but concluded that: (1) there was no sound basis for concluding that Plaintiff (still) suffered from Lyme disease or had received a bad

2

vaccine; (2) the treatment records that Plaintiff provided did not reflect the severity or frequency of the ailments from which Plaintiff claims to suffer, such as chronic pain or a severely weakened immune system; and (3) lab results indicating Plaintiff had Lyme disease came from a discredited clinic and were, therefore, not reliable. (AR 528-35.)

Notably, in discounting Lyme disease as a cause of Plaintiff's pain, Dr. Weaver relied on a report from the New England Journal of Medicine, which concluded that the medical consensus on "chronic Lyme disease" is that it does not exist, even if this view is not held by the wider public. *See* Henry Feder, Jr., et al., *A Critical Appraisal of "Chronic Lime Disease"*, 357 New Eng. J. Med. 1422 (Oct. 2007), *available at* http://www.nejm.org/doi/full/10.1056/nejmra072023.

Further, Dr. Weaver appears to have consulted Wikipedia in determining whether or not, in line with Plaintiff's allegations, a defective measles vaccine that Plaintiff received in 1984 resulted in widespread fatalities and greatly weakened Plaintiff's immune system. Dr. Weaver noted that neither Wikipedia nor an authority affiliated with the National Institutes of Health corroborated Plaintiff's allegations. (AR 379-85, 386-91.) He further noted that there was a lack of evidence of "frequent, unusual, or opportunistic infection" that would be present in someone with a compromised immune system. (AR 535.) In light of this evidence, Dr. Weaver concluded that there was significant evidence that cut against Plaintiff's assertion that he had some sort of immunodeficiency. (AR 535.)

Dr. Weaver's opinion is largely supported by Dr. John Mars, who also examined Plaintiff, accepted that Plaintiff suffered from chronic Lyme disease, but nevertheless

concluded that Plaintiff could, among other things, lift and carry up to fifteen pounds, sit without restriction, stand and walk for up to ten minutes each hour.  *See, e.g.*, (AR 481-84.)

The ALJ ultimately endorsed Dr. Weaver's position, echoing the doctor's concern that Plaintiff's infrequent trips to any medical professional undermined his claim that he was suffering from constant and intense pain.  The ALJ further noted that Dr. Weaver's position was supported by Dr. Mars and that, on the whole, the record evidence supported a finding that Plaintiff had residual functional capacity to perform work, notwithstanding his impairments.  (AR 24-34.)

Plaintiff now challenges several aspects of this reasoning on appeal.

## II.  **STANDARD OF REVIEW**

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Wall*, 561 F.3d at 1084.  In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the

Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## III.  ANALYSIS

Applying the above standard here, this Court finds that there was substantial evidence to support the ALJ's determination about the extent of Plaintiff's disabilities. In short, Dr. Weaver presents a "fairly conflicting view[]," *Oldham*, 509 F.3d at 1257-58, to the contrary evidence provided by Plaintiff regarding his disability.  Further, Dr. Weaver's view is well-supported: he relied on a preeminent medical journal in discounting Plaintiff's allegations of "chronic Lyme disease," and he pointed to several important inconsistencies in Plaintiff's allegations about the severity of his symptoms. For example, he noted the lack of a medical record that one would expect from a person complaining of nearly constant and excruciating pain and a compromised immune system.  More broadly, Dr. Weaver's conclusion that Plaintiff is not disabled is echoed by Dr. Mars who reached a similar conclusion in determining the amount of physical activity appropriate for Plaintiff in a given work day, even accepting that Plaintiff suffered from Lyme disease.

To be sure, Plaintiff can point to contrary evidence in the record that conflicts with ALJ's endorsed narrative of Plaintiff's life and disability.   However, that is beside the point.  It is not the province of this Court to "displace the agency's choice between two fairly conflicting views" on whether Plaintiff has certain ailments or whether they are

5

disabling, even if the Court may have "made a different choice [about how to view this evidence] had the matter been before it de novo." *Oldham*, 509 F.3d at 1258.

Plaintiff resists this conclusion on a number of grounds. The Court considers each in turn.

First, Plaintiff asserts that the ALJ committed reversible error when he supported Dr. Weaver's opinion because Dr. Weaver relied on Wikipedia in discrediting Plaintiff's claim that his immune system was compromised by a bad measles vaccine. This Court finds no *per se* prohibition on citing Wikipedia in judicial opinions. Further, Dr. Weaver relied not only on this source, but also on an authority administered by the National Institute of Health and his own observation that, if Plaintiff suffered from some sort of immunodeficiency, it would be reflected by more frequent hospital visits or at least some sort of medical diagnosis. (AR 535.) These additional bases for Dr. Weaver's determination are sufficient for purposes of this Court's more deferential review of the ALJ's opinion.[2]

Second, throughout his briefing, Plaintiff expresses frustration both with the demeanor of various doctors who provided assessments of Plaintiff's disability and the processes and procedures the Social Security Administration has implemented to assess his disability claim. *See, e.g.*, (Doc. # 14 at 8) (noting that Drs. Weaver and Mars examined Plaintiff only for a minimal amount of time and had a brusque approach

---

[2] This position would hold even if, as Plaintiff suggests in his Reply brief (Doc. # 16 at 5), there are documented episodes from 1984 of adverse effects to a measles vaccine. Indeed, what is crucial here is not so much the existence of this episode in 1984 but its continued effect on Plaintiff thirty years later: as to this latter issue, the dearth of medical evidence documenting some sort of immunodeficiency is what is most fatal to Plaintiff's contrary position.

to the physical examination); (*id.* at 10) (suggesting that the SSA is an "incompetent bureaucracy"); (Doc. # 16 at 3) (decrying the "disparaging tone[]" used by many medical professional who assessed Plaintiff's claim). Relatedly, Plaintiff alleges that the conduct of these entities and actors rises to the level of intentional infliction of emotional distress.

These arguments are unavailing. Whatever Plaintiff's concerns about the process used or the demeanor of the people who aided the ALJ in making his determination, Plaintiff does not raise a valid argument about how this affected the substance of what was decided by the ALJ. Further, to the extent that Plaintiff can explore tort actions against any of these actors, this appeal is not the proper forum to do so.

Third, Plaintiff suggests that the vocational expert was unqualified to render an opinion about Plaintiff because she did not know the nuances of Plaintiff's case or his health condition. (Doc. # 14 at 11.) The Vocational Expert did not need these qualifications: her only task is to provide the ALJ with a response about the availability of certain jobs when prompted by a hypothetical question posed by the ALJ.[3]

---

[3] In his Reply, Plaintiff raises two new arguments: (1) that the ALJ erred in insufficiently considering the opinion of Dr. Zorilla, who concluded that Plaintiff had no ability to work and who appears to have examined Plaintiff on several occasions; and (2) that the ALJ erred in failing to consider as a severe impairment Plaintiff's extreme light, sound, and body-temperature sensitivity. Plaintiff has forfeited these arguments by failing to raise them in his opening brief. *See, e.g.*, *Hanh Ho Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004). Further, on the merits, they fail. First, the record establishes both that Dr. Zorilla had a limited treating relationship with Plaintiff—indeed, it appears that Dr. Zorilla performed no actual examinations of Plaintiff but rather just filled out reports—and that this doctor's conclusions conflict with the broader record evidence, which the ALJ concluded were more fully reflected in Dr. Weaver's opinion. (AR at 32-33.) *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (holding that factors to be considered in discounting a treating physician's opinion include

## IV. CONCLUSION

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching her adverse finding as to Plaintiff's disabilities.

Accordingly, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED. It is FURTHER ORDERED that each party shall pay its own costs and attorneys' fees.

DATED: September 4, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

the nature and extent of the treatment relationship and the extent to which the opinion is consistent with the record as a whole). Second, Plaintiff's allegation about sensitivity to sound, light, and extreme temperatures is hardly documented in the record and Plaintiff makes no coherent attempt to explain why based on such limited references, the alleged impairment should be treated as severe. *Cf. Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (noting that "a showing of the mere presence of a condition is not sufficient" to make it severe).